# Exhibit A

Amended Memorandum in Opposition

*NOTE: Plaintiff's exhibits, originally filed with the Memorandum in Opposition (Dkt. 13), remain unchanged and are incorporated by reference in this amended filing.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

SARAH ELIZABETH ALKUDA

Mailing Address:
945 McKinney St. Unit 17873
Houston, TX, 77002

Residential Address:
Al Khan, Sharjah, U.A.E.

Plaintiff,

-vs-

MCDONALD HOPKINS Co., L.P.A.
600 Superior Avenue Northeast
Suite 2100
Cleveland, Ohio 44114

Defendant

Case No. 1:24-cv-01103

JUDGE BRIDGET MEEHAN BRENNAN
MAGISTRATE JUDGE: REUBEN J.
SHEPERD

**PLAINTIFF'S MEMORANDUM IN
OPPOSITION TO THE DEFENDANT'S
MOTION TO DISMISS**

## <u>PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS</u>

### I.    INTRODUCTION

This case arises from a breach of fiduciary duty that has resulted in significant financial and personal harm to the plaintiff. The defendant, McDonald Hopkins Co., L.P.A., through its involvement in the administration of the trusts, failed to meet the obligations it accepted when undertaking fiduciary responsibilities on behalf of the trustee. Plaintiff asserts that these breaches, supported by clear documentation and a sustained timeline of involvement, have deprived them of critical information and substantial assets. The defendant's motion to dismiss seeks to obscure these straightforward fiduciary obligations by conflating them with claims of

legal malpractice, all while utilizing a strategy designed to confuse and complicate simple legal principles and facts.

Plaintiff acknowledges the eight-day delay in filing due to medical emergencies concerning her minor son and respectfully requests equitable tolling based on these extraordinary circumstances, detailed and supported below.

At this early stage of litigation, the focus must remain on the sufficiency of the allegations. Plaintiff's claims for breach of fiduciary duty, fraud, misrepresentation, and other causes are sufficiently pled. For these reasons, the defendant's motion to dismiss must be denied so that these claims can proceed to discovery. Any disputes regarding facts or the precise nature of the defendant's duties are issues to be resolved after fully exploring the evidence. For the reasons set forth below, the defendant's motion is meritless and should be denied in its entirety.

## II.    LAW AND ARGUMENT

### A.  Withdrawal Of Claims On Behalf Of Minor Child J.A.

Plaintiff acknowledges that pro se litigants cannot represent their minor children in federal court (Shepherd v. Wellman, 313 F.3d 963, 970 (6th Cir. 2002)) and voluntarily withdraws all claims brought on behalf of her minor child J.A. This withdrawal is intended to clarify that all claims in this litigation remain, and are brought solely by Plaintiff in her individual capacity.

### B.  Legal Standard For Motion To Dismiss

Under Fed. R. Civ. P. 12(b)(6), a motion to dismiss should only be granted if the complaint fails to state a claim upon which relief can be granted. A complaint must present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" (*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the plausibility standard requires more than speculative or conclusory allegations, it does not demand a showing of probability.

The Court accepts factual allegations as true and draws reasonable inferences in favor of the plaintiff (*Twombly*, 550 U.S. at 555). At this stage, the focus is not on whether the plaintiff will ultimately prevail, but whether they can support their claims with evidence. Fed. R. Civ. P. 12(b)(6) evaluates the sufficiency of the complaint, not the merits. Factual disputes—such as the extent of McDonald Hopkins' involvement—are matters to be resolved during discovery, not at the dismissal stage.

As recognized in *York v. Ohio State Hwy. Patrol*, 60 Ohio St. 3d 143, 144–45, 573 N.E.2d 1063, 1064 (1991), the evidence necessary to prevail is often obtained through discovery, and premature dismissal may unfairly limit access to that evidence. Therefore, if the complaint presents a plausible basis for relief, the case should proceed to discovery, where disputes can be fully addressed (*Iqbal*, 556 U.S. at 679).

### C.  Response To Statute Of Limitations Arguments

#### 1.  Equitable Tolling for Filing Delay Under Ohio Savings Statute

Plaintiff acknowledges that the filing of her complaint occurred eight days after the one-year deadline under Ohio Rev. Code Ann. § 2305.19(A), and sincerely regrets this delay. The

delay resulted from extraordinary circumstances involving Plaintiff's son's medical emergencies, which required multiple hospitalizations during May and June 2024. Plaintiff respectfully requests the Court to apply equitable tolling in light of these events.

Equitable tolling applies when external factors beyond a plaintiff's control prevent timely filing, provided the plaintiff has acted with diligence. Ohio courts have held that equitable tolling is appropriate where a plaintiff pursues their rights diligently but is prevented from timely filing due to extraordinary circumstances beyond their control. See *Booher v. Honda of Am. Mfg., Inc.,* 2022-Ohio-1131, ¶ 31 (Ohio Ct. App. 2022).

Plaintiff demonstrated diligence in preparing the complaint months in advance of the deadline, with legal research and drafting efforts well underway. Unfortunately, her son's four hospitalizations between May 14, 2024, and June 20, 2024 (with detailed medical records provided in Exhibit A), made it impossible to finalize and file the complaint on time. During these critical periods, Plaintiff was her son's primary caregiver, rendering her unable to meet the original deadline.

Medical emergencies of this nature warrant equitable tolling. Courts have consistently found that such circumstances justify tolling where a plaintiff's caregiving responsibilities prevent timely filing. See *Sharpe v. Ohio Civ. Rights Comm'n,* 2006-Ohio-162, ¶ 12 (Ohio Ct. App. 2006). Plaintiff's involvement as the primary caregiver during her son's hospitalizations rendered it impossible to file on time, despite her diligent preparation.

The eight-day delay is minimal and excusable. Ohio courts have recognized that brief delays caused by medical emergencies, when supported by documentation and diligence in

preparation, warrant tolling. See *Coomer v. Opportunities for Ohioans with Disabilities*, 2020-Ohio-450, ¶ 23 (Ohio Ct. App. 2020). Plaintiff acted promptly once her son's medical condition stabilized, demonstrating good faith and respect for the judicial process. Dismissing this case based on such a minor, uncontrollable delay would result in an unjust outcome, while equitable tolling is designed to prevent such procedural unfairness.

For these reasons, equitable tolling is warranted to excuse the brief delay in refiling under the Ohio Savings Statute.

## 2. Misclassification as Malpractice and Applicable Statue of Limitations

In their motion to dismiss, McDonald Hopkins mischaracterizes Plaintiff's breach of fiduciary duty claims as legal malpractice. This tactic is not new; McDonald Hopkins previously attempted to conflate fiduciary responsibilities with legal services in the prior litigation (*In re The Adversarial Case of Sarah Elizabeth Alkuda*, Cuyahoga County Probate Court Case No. 2019ADV242693, before Judge Anthony J. Russo). The Probate Court, however, recognized the distinction between these roles and rejected McDonald Hopkins' attempts to obscure the nature of its fiduciary duties.

In the August 6, 2019, Judgment Entry, the Probate Court denied McDonald Hopkins' motion to dismiss. The court acknowledged that although McDonald Hopkins was hired as legal counsel for the trustee, it *also* performed tasks traditionally regarded as fiduciary duties. Specifically, the court noted:

> "R.C. 5808.07 permits a trustee to delegate powers and duties to others. In performing delegated functions, an agent or fiduciary owes a duty to the trust to exercise reasonable

care to comply with the terms of the delegation." (August 6, 2019, Judgment Entry, attached as Exhibit L to the compl.).

This judgment establishes that fiduciary responsibilities—such as record-keeping, reporting to beneficiaries, and communicating trust-related information—are **distinct** from legal services. McDonald Hopkins was delegated such fiduciary duties by the trustee, and thus, claims arising from these tasks must be analyzed within the framework of fiduciary obligations, not legal malpractice.

The March 9, 2022, Judgment Entry (attached as Exhibit C) denying McDonald Hopkins' motion for summary judgment further reinforced this distinction. The court emphasized that while McDonald Hopkins characterized these duties as "legal services," such a classification does not alter the nature of the tasks. The court reiterated that:

> "Simply characterizing them as 'legal services' does not make them so." (Judgment Entry, March 9, 2022, Exhibit C).

This judgment reaffirmed that duties such as record-keeping, reporting, and communicating with beneficiaries, which McDonald Hopkins handled, were fiduciary in nature, not legal services. By accepting these delegated responsibilities from the Trustee, McDonald Hopkins assumed a fiduciary duty, and are thus subject to fiduciary law, not the statutes governing legal malpractice.

## III.    FIDUCIARY DUTIES DELEGATED TO MCDONALD HOPKINS

In Plaintiff's original complaint, Plaintiff established that McDonald Hopkins had been involved in Plantiff's father's estate planning and trust administration from its inception in 1997, continuing well into the years after his death. The firm played a significant role both before and

after her father's death, while first her father and then her mother served as Trustee, in managing

and overseeing the estate plan, which continued well beyond 2018.

### A. Timeline Of Delegated Fiduciary Responsibilities

To provide further context to these already established facts, Plaintiff offer additional

data points that reinforce the timeline of McDonald Hopkins' fiduciary duties, dating as far back

as 2008 and continuing through 2024. The following timeline further supports the assertion that

McDonald Hopkins had long-standing fiduciary responsibilities that were not limited to the

narrow period of 2016-2018, as they claim.

1. **August 8, 2008**: A trust report from Bernard L. Karr at McDonald Hopkins was sent to Plaintiff and other beneficiaries, detailing trust activities for the year 2007. The report outlines the trustee's obligations under the Ohio Trust Code and explicitly states that McDonald Hopkins was involved in administering the trust by providing annual reports. (Ohio Trust Report dated August 8, 2008, attached as Exhibit D)

2. **February 2016**: The engagement agreement between Plaintiff's mother (the trustee) and McDonald Hopkins delegated significant fiduciary duties to McDonald Hopkins, including record-keeping, reporting to beneficiaries, and communicating trust-related information. (2016 Engagement Letter, attached as Ex. J to the Compl.)

3. **February 26, 2018**: A letter from Kate Wensink, at McDonald Hopkins, was sent to trust beneficiaries confirming that McDonald Hopkins would continue to manage the trust's annual accountings on behalf of the trustee. She also informed beneficiaries that they could reach out to her or Bernard Carr to discuss any trust-related matters. (February 2018 Letter from Kate Wensink, attached as Ex. K to Compl.)

4. **January 10, 2022**: On January 10, 2022, Plaintiff's mother (the Trustee) testified in her deposition that McDonald Hopkins, specifically Kate Wensink, handled the annual accounting and reporting duties to the beneficiaries. When asked who was responsible for these duties, she responded, "the lawyers, yes. Lawyer. It would be Kate Wensink." Notably, the attorney for the trustee attempted to halt this line of questioning, invoking attorney-client privilege to prevent further inquiry. When asked if she communicated with beneficiaries, she confirmed that she asked McDonald Hopkins to send the necessary information, stating, "Meaning they pushed send, yes, and I asked them to do that."

(Deposition of Lori Muller-Zaim, Jan. 10, 2022, at 147, 149–50, attached as Ex. G to Compl.).

5. **May 3, 2024**: During a phone call on May 3, 2024, Plaintiff's mother informed Plaintiff that she should expect an email from Kate Wensink containing trust documents. This phone call provides further evidence that McDonald Hopkins remained involved in fiduciary responsibilities well into 2024, contradicting their assertion that their role ended in 2018. (Plaintiff's sworn declaration, attached as Exhibit B)

The above timeline clearly demonstrates that McDonald Hopkins was delegated fiduciary responsibilities in relation to trust administration as early as 2008, while Plaintiff's father was still trustee, and that their involvement continued through at least May 2024. Contrary to their claim of limited involvement from 2016-2018, the evidence shows a pattern of **sustained delegation** of trustee responsibilites. McDonald Hopkins' attempt to restrict their liability to this narrow window is contradicted by the facts.

It is imperative that all relevant engagement agreements, letters, and communications be fully disclosed during discovery to establish the full extent of McDonald Hopkins' role in administering these trusts. The evidence provided thus far strongly suggests that McDonald Hopkins has been an active delegate of trustee duties for over a decade, and any attempt to limit their liability is not supported by the facts. In past proceedings, McDonald Hopkins repeatedly shielded engagement agreements behind claims of attorney-client privilege, and Plaintiff may require the Court's involvement to secure these essential records during discovery.

### B. Delegated Fiduciary Duties Were Breached

Despite these obligations, McDonald Hopkins has consistently failed to uphold the standards required of a fiduciary. Over the course of several years, McDonald Hopkins failed to provide complete and accurate accountings of the trust assets, withheld critical financial

documents, and obstructed efforts to obtain third-party records that would allow for a comprehensive review of the trusts' administration.

These failures are not minor administrative oversights but constitute clear breaches of fiduciary duties. As a beneficiary, Plaintiff has been denied access to essential information needed to protect her interests and the interests of her son, and to ensure that the trust assets were properly managed. In the complaint, Plaintiff outlined the specific instances in which McDonald Hopkins breached its fiduciary duties, supported by expert analysis and documentation of numerous failures to comply with legal and ethical obligations. Most egregiously, to this day, there has been no accounting or evidence justifying the disappearance of millions of dollars from the Sarah Elizabeth Zaim Irrevocable Trust, which was specifically established for Plaintiff's benefit.

### C. Fiduciary Duty Vs. Legal Malpractice

McDonald Hopkins' attempt to misclassify the Plaintiff's claims as legal malpractice is unsubstantiated and ignores the clear distinction between fiduciary duties and legal services. Under Ohio law, fiduciary responsibilities, particularly when delegated by a trustee, involve duties of care, loyalty, and transparency—obligations that are fundamentally different from legal services.

Courts have long recognized that when an attorney assumes non-legal roles such as **record-keeping**, **reporting to beneficiaries**, and **managing trust assets**, these functions are fiduciary in nature and must be treated as such. For example, in *McConnell v. Hunt Sports Enterprises*, 132 Ohio App. 3d 657, 725 N.E.2d 1193, 1213 (1999), the court held that fiduciary agents must exercise reasonable care when managing assets and reporting to beneficiaries in a

non-legal capacity. Similarly, Ohio courts have emphasized that when attorneys take on non-legal responsibilities, they assume fiduciary duties in those areas.

McDonald Hopkins' involvement in tasks beyond traditional legal advice—including administering trust reports, managing financial records, and communicating with beneficiaries—renders their role one of a fiduciary, not just legal counsel. As such, they were obligated to exercise the reasonable care required of fiduciaries in these functions.

### Mcdonald Hopkins' Vicarious Liability For Fiduciary Breaches

The Defendant's reliance on *National Union Fire Ins. Co. v. Wuerth* to argue that law firms cannot engage in the practice of law is irrelevant here, as the Plaintiff is not asserting legal malpractice claims. Instead, the claims involve fiduciary breaches, which are not shielded by the *Wuerth* precedent.

While the firm argues that only individual attorneys can be held liable, McDonald Hopkins can still be held responsible under the principle of vicarious liability for the actions of its attorneys who were acting within the scope of their employment. Attorneys such as Kate Wensink, along with paralegal Kathleen M. Kennedy, carried out fiduciary functions on behalf of the firm, including record-keeping, managing trust accountings, and communicating trust-related information. These are fiduciary actions performed under the direction and authority of McDonald Hopkins, and the firm is liable for any breaches committed in the execution of those duties.

Vicarious liability allows for the attribution of the wrongful acts of agents to their principal, in this case, the law firm. See *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth,* 122 Ohio St. 3d 594, 2009-Ohio-3601, 913 N.E.2d 939, 943-44. Therefore, McDonald Hopkins cannot escape liability simply by arguing that the firm itself did not "practice law." The Plaintiff

has sufficiently alleged that McDonald Hopkins, through its attorneys and agents, assumed fiduciary duties and breached those duties over an extended period of time.

Ohio Rev. Code Ann. § 5808.07 permits trustees to delegate duties to others, and when those duties are delegated, agents like McDonald Hopkins owe a duty of reasonable care in performing fiduciary functions. The mere characterization of these actions as "legal services" does not alter the nature of the tasks McDonald Hopkins undertook. These duties—such as ensuring accurate accountings—are fiduciary responsibilities, not subject to legal malpractice statutes.

Therefore, McDonald Hopkins' assumption of fiduciary duties is not covered under legal malpractice statutes. These claims must be analyzed within the framework of **fiduciary duty law**, which is governed by a different statute of limitations and legal standards than malpractice claims. See *Strock v. Pressnell*, 38 Ohio St. 3d 207, 217 (1988).

## IV. STATUTE OF LIMITATIONS & CONTINUOUS BREACH DOCTRINE

Moreover, McDonald Hopkins' assertion that the statute of limitations has expired is flawed. Under the *continuous breach doctrine*, fiduciary breaches are ongoing when a fiduciary continues to violate their duties over time. In this case, McDonald Hopkins continued to act in a fiduciary capacity through *2024*, including communicating trust-related information and managing trust records. These breaches of fiduciary duty were ongoing and cumulative, meaning the statute of limitations should not begin to run until the final breach occurred.

By documenting that McDonald Hopkins' involvement in trust administration extended well beyond *2018* and continued into *2024*, Plaintiff has clearly demonstrated that these fiduciary breaches occurred within the applicable timeframe. Consequently, the claims against McDonald Hopkins are timely, and their statute of limitations defense must fail.

McDonald Hopkins remains liable for their ongoing breaches of fiduciary duty, and their attempt to conflate these fiduciary breaches with legal malpractice is legally and factually incorrect. The claims presented are well within the applicable statute of limitations for fiduciary duty breaches, *and* the statute of repose, which applies only to legal malpractice, is irrelevant here.

## V.   FRAUD AND MISREPRESENTATION CLAIMS ARE PLED WITH SUFFICIENT PARTICULARITY

Defendant McDonald Hopkins argues that Plaintiff's claims of fraud and misrepresentation fail because they are not pled with the particularity required under Federal Rule of Civil Procedure 9(b). However, this contention is without merit. Plaintiff's Complaint sets forth the "who, what, when, where, and how" of the alleged fraud with sufficient specificity to satisfy Rule 9(b). In *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006), the court held that Rule 9(b) is satisfied when the complaint includes specific facts about the fraudulent conduct, including the time, place, and content of the alleged misrepresentations. Plaintiff's Complaint meets this standard by providing detailed allegations of the fraudulent acts, dates, and the individuals involved.

### A.  Allegations Of Fraud And Misrepresentation, Supported By Documentation

Plaintiff has sufficiently pled both fraud and misrepresentation with the necessary level of detail and supporting documentation. This section outlines the "who, what, when, where, and how" of the fraudulent conduct and misrepresentations alleged in the Complaint, while also referencing the documentation that substantiates these claims.

- **Who:** The Complaint identifies **McDonald Hopkins** and specifically attorney **Kate Wensink** as the individuals primarily responsible for the alleged fraud and misrepresentations. These individuals acted on behalf of Plaintiff's mother, Lori Muller-Zaim, the trustee of the family trusts, while representing the trust beneficiaries.

- **What:** The Complaint asserts that McDonald Hopkins engaged in several instances of fraudulent conduct and misrepresentation:

  o **False Claims about Trust Termination**: McDonald Hopkins made contradictory statements regarding the termination of the Irrevocable Trust. In some communications, they claimed the trust was terminated in **2005**, while in others, they suggested it was terminated in **2010**. However, no supporting documentation was provided to validate these claims. In her deposition, **Plaintiff's mother testified that the irrevocable trust held $6 million at the time of the grantor's death** (Deposition of Lori Muller-Zaim, Jan. 10, 2022, at 147, attached as Ex. G to Compl.).

  o **Misrepresentation about Use of Trust Funds**: McDonald Hopkins misrepresented that the trust's assets were used to fund Plaintiff's education. This was later contradicted by deposition testimony and records, which revealed that educational expenses were covered by Scholars Choice accounts, not the trust. (Scholars Choice Withdrawal Form attached as Exhibit I to the Compl.; Deposition of Lori Muller-Zaim, Jan. 10, 2022, at 147, attached as Ex. G to Compl.).

- **When:** The fraudulent representations and misstatements occurred between **2016 and 2023**, during the administration of the family trusts and estate. These misrepresentations

were particularly prominent during the litigation process and in communications responding to discovery requests, such as McDonald Hopkins' responses from 2019 and 2020, which continued to offer inconsistent explanations regarding the trust's termination .

- **Where:** The alleged fraud and misrepresentations were communicated via phone calls, emails, and other written correspondence from McDonald Hopkins to Plaintiff. These communications took place prior to, and during the previous litigation and involved direct responses to Plaintiff's inquiries about the trust's status and the whereabouts of its assets .

- **How:** The method of deception involved several tactics, including:

  o **Contradictory Explanations**: McDonald Hopkins provided conflicting and unsubstantiated statements about the trust's termination. This included failure to produce documentation, such as tax identification numbers (TINs) or account numbers, which would have helped to confirm the actual status of the trust .

  o **Obstruction of Discovery**: The Complaint details how McDonald Hopkins actively obstructed discovery efforts, including refusing to produce relevant records and trust or account identification numbers, that could clarify the trust's status.

  o **Failure to Account for Funds**: McDonald Hopkins never produced any records that definitively showed the trust had been terminated. Instead, financial records produced later relating to other family trusts, revealed multiple red flags and discrepancies, further casting doubt on their prior statements regarding the trust's usage.

Contrary to Defendant's assertion, Plaintiff's Complaint is supported by extensive documentation, including:

- **Irrevocable Trust Document**: The Irrevocable Trust Between Mohammad Tarif Zaim and Lori Ann Muller-Zaim, created in 1997, is a central document in the dispute. This trust was intended to benefit Plaintiff and her sisters, but its termination and usage have been misrepresented by McDonald Hopkins. (Irrevocable Trust Document, attached as Exhibit C to Compl.)

- **Plaintiff's Affidavit**: In this affidavit, Plaintiff provides first-hand accounts of her father's estate planning and the administration of the trust. She details her conversations with her father regarding the trust's assets, the involvement of McDonald Hopkins, and her exclusion from the administration process. (Plaintiff's 2020 Affidavit, attached as Exhibit F to Compl.)

- **Scholars Choice Withdrawal Form**: This form evidences that Plaintiff's education was funded by Scholars Choice accounts identified by her fathers Social Security Number, not the Irrevocable Trust, contradicting McDonald Hopkins' claims. (Scholars Choice Withdrawal Form, attached as Exhibit I to Compl.)

- **Lori Muller-Zaim's Deposition**: Plaintiff's mother, the Trustee, testified in her deposition that she *was unaware of McDonald Hopkins' claims that the Irrevocable Trust was used to fund Plaintiff's education.* She said that the trust held *6 million* dollars at the time of Plaintiff's father, the grantor's death. (Lori Muller-Zaim's Deposition Transcript, attached as Exhibit G to Compl.)

- **Expert Forensic Accountant Reports**: Two forensic reports from Jeffrey Donohoe, dated June 17, 2020, and August 2, 2021, provide detailed findings relating to all family

trusts. Donohoe's reports highlight signifigant financial inconsistencies, missing documentation, and unauthorized asset transfers, supporting Plaintiff's claims of mismanagement. Crucially, Donohoe notes that *no evidence was provided by McDonald Hopkins to prove the closure of the Irrevocable Trust*, despite repeated requests for relevant documentation. He stated that *"numerous documents that would definitively show the termination or closure of the trust were not produced,"* which raises significant red flags regarding the firm's handling of the trust and its assets. This gap in documentation further supports the claim that McDonald Hopkins acted to conceal the true status of the trust from Plaintiff. (Jeffrey Donohoe's June 17, 2020 and August 2, 2021 Reports, attached as Exhibits N and O to Compl.).

This detailed documentation and the specific allegations in the Complaint demonstrate that Plaintiff has more than adequately met the heightened pleading standard under Rule 9(b). Plaintiff has identified the individuals involved, the precise misrepresentations made, the time period during which they occurred, and the methods by which McDonald Hopkins sought to deceive Plaintiff.

## VI.  REFRAMING THE OBSTRUCTION OF JUSTICE CLAIM AS BREACH OF FIDUCIARY DUTY AND FRAUD

Defendant McDonald Hopkins asserts that Plaintiff's claim for obstruction of justice should be dismissed because it is a criminal offense and does not provide a private right of action. Plaintiff acknowledges this point; however, the essence of this claim is more accurately characterized as part of Defendant's breach of fiduciary duty and fraud. Specifically, McDonald Hopkins engaged in conduct that obstructed Plaintiff's access to critical trust records and

information, thereby misleading Plaintiff and preventing her from protecting her interests as a beneficiary.

As detailed in the Complaint, McDonald Hopkins withheld critical financial documents, obstructed efforts to obtain third-party records, and provided conflicting explanations regarding the status of the Irrevocable Trust. These actions go beyond mere administrative oversights— they represent a deliberate effort to conceal the true state of the trust's assets. Such conduct constitutes a breach of fiduciary duty, as McDonald Hopkins had a duty to act with loyalty and transparency toward the trust beneficiaries. See *McConnell v. Hunt Sports Enterprises,* 132 Ohio App. 3d 657, 725 N.E.2d 1193, 1213 (1999).

Moreover, McDonald Hopkins' obstruction and failure to account for the missing assets of the trust support a claim for fraud and misrepresentation, as they misled Plaintiff regarding the trust's termination and usage of its funds. Ohio courts have recognized that fraudulent concealment can form the basis of a civil claim when a party actively hides material facts to the detriment of another. See *Burr v. Bd. of Cty. Comm'rs,* 23 Ohio St. 3d 69, 76, 491 N.E.2d 1101, 1108 (Ohio 1986).

Therefore, while Plaintiff withdraws the claim of obstruction of justice as a standalone cause of action, the allegations surrounding McDonald Hopkins' conduct remain actionable as part of Plaintiff's claims for breach of fiduciary duty and fraud. These claims should proceed to discovery, where the full extent of McDonald Hopkins' efforts to conceal trust information can be properly explored.

## VII.    CONCLUTION

For the reasons outlined above, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss. The claims against McDonald Hopkins involve breach of fiduciary duty, fraud, misrepresentation, negligence, breach of contract, and conversion—distinct from legal malpractice, as Defendant inaccurately asserts. McDonald Hopkins assumed clear fiduciary responsibilities through its involvement in trust administration, and Plaintiff's claims are both well-pleaded and grounded in established law.

Defendant's argument that the claims are time-barred under the statute of limitations and statute of repose overlooks the applicability of equitable tolling, due to extraordinary personal circumstances, as supported by medical records. A dismissal without fully considering these facts would lead to an unjust outcome.

Proceeding to discovery is essential to uncover McDonald Hopkins' full involvement and accountability regarding its fiduciary duties. Plaintiff cautions that Defendant's efforts to complicate these straightforward fiduciary issues mirror tactics used in prior litigation. Eight years after Plaintiff's father's death, she still lacks confirmation that her interests as a beneficiary have been properly protected, most importantly regarding the fate of the Irrevocable Trust.

For these reasons, Plaintiff respectfully requests that this Court deny Defendant's Motion to Dismiss and allow the case to proceed to discovery, where these matters can be fully examined and the harm caused properly addressed.

Respectfully submitted,

Sarah E. Alkuda

Plaintiff, Pro Se

Mailing Address: 945 McKinney St.
Unit 17873, Houston, TX, 77002

Residential Address:
Al Khan, Sharjah, U.A.E.

+1 (949) 677-8012
+971 56 817 7335
Sarah.alkuda@gmail.com

EXHIBIT LIST

- Exhibit A – Medical Records of JA which have been legalized for use as international evidence
- Exhibit B – Sworn Declaration of Sarah Elizabeth Zaim dated October 6, 2024
- Exhibit C – August 6, 2019 Judgment Entry from Cuyahoga County Probate Court Case No. 2019ADV242693
- Exhibit D  – 2007 Trust Report from McDonald Hopkins dated August 8, 2008