UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| SARAH ELIZABETH ALKUDA, *et al.*, | ) | CASE NO. 1:24-cv-1103 |
| | ) | |
| Plaintiffs, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| MCDONALD HOPKINS CO., L.P.A., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

Before the Court is Defendant McDonald Hopkins Co., L.P.A.'s ("McDonald Hopkins") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 10.) Plaintiff Sarah Alkuda ("Plaintiff" or "Alkuda") opposed the motion (Docs. 13, 14-1), and Defendant replied. (Doc. 16.) For the reasons below, Defendant's motion is GRANTED.

**I.   BACKGROUND**

In Alkuda's words, "[t]his case involves the mishandling of family trusts by McDonald Hopkins, resulting in a multi-million-dollar trust being unaccounted for, the disinheritance of [Plaintiff and her son] and significant family discord." (Doc. 1 at 19.)[1] Plaintiff's father created an estate plan that involved several trusts and accounts. (*See id.* at 5–7.) He relied on McDonald Hopkins to create, administer, and modify these trusts and accounts. (*Id.* at 5.) The estate was "estimated to have been valued at $12 million in total." (*Id.* at 2.)

Following her father's death in January 2016, Plaintiff requested trust records from McDonald Hopkins to verify that all assets were accounted for and allocated in accordance with the estate plan. (*Id.* at 5, 7.) In 2019, Alkuda filed a complaint for an accounting with the

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document and PageID# rather than any internal pagination.

Cuyahoga County Probate Court, naming both McDonald Hopkins and her mother, "the Trustee of all relevant trusts," as defendants. (*Id.* at 7.) The probate case involved three topics: "McDonald Hopkins' fiduciary duty to trust beneficiaries, the mystery of the Irrevocable Trust, and the concerning findings in Trust [] records." (*Id.* at 8.) The parties litigated these issues for four years. (*Id.*)

According to Alkuda, McDonald Hopkins engaged in dilatory and deceptive practices to "control the narrative" before the probate court. (*See id.* at 11–15.) Even so, Plaintiff uncovered signs of financial fraud. (*Id.* at 15–17.) During the final pretrial conference, Alkuda settled with her mother and withdrew her claims against McDonald Hopkins. (*Id.* at 18–19.) Plaintiff intended to refile her claims against McDonald Hopkins as permitted by Ohio's savings statute. (*Id.* at 19.)

Plaintiff filed a complaint here on June 28, 2024, on behalf of herself and her minor son. (Doc. 1.)[2] The basis of Plaintiff's complaint is diversity jurisdiction. (*See id.* at 2.)[3] Besides summarizing the proceedings before the probate court, Plaintiff's complaint brings six claims against McDonald Hopkins for breach of fiduciary duty, fraud and misrepresentation, negligence, obstruction of justice, breach of contract, and conversion. (*Id.* at 20–22.) Plaintiff seeks compensatory and punitive damages, records from the accounts in her father's estate,

---

[2] In general, "parents cannot appear *pro se* on behalf of their minor children because a minor's personal cause of action is her own and does not belong to her parent or representative." *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002). McDonald Hopkins raised this issue in its motion to dismiss. (Doc. 10-1 at 510 n.1.) In her opposition, Plaintiff withdrew the claims on behalf of her minor child. (Doc. 14-1 at 596.)

[3] Plaintiff is a citizen of the United States currently residing in the United Arab Emirates, having lived in California previously. (Doc. 1 at 2.) McDonald Hopkins is a citizen of Ohio. (*See id.*) Plaintiff alleges her father's estate was worth over $9 million at the time of his death. (*Id.*) Therefore, the Court is satisfied that the requirements for diversity jurisdiction are met. *See* 28 U.S.C § 1332.

production of engagement letters between her parents and McDonald Hopkins, and attorneys' fees and costs.  (*Id.* at 22–24.)

On August 16, 2024, McDonald Hopkins moved to dismiss Plaintiff's complaint for failure to state a claim.  (Doc. 10.)  Plaintiff opposed this motion on October 7, 2024.  (Doc. 13.)  On October 18, 2024, Plaintiff moved for leave to file an Amended Memorandum in Opposition *instanter*.  (Doc. 14.)  McDonald Hopkins moved for an extension of time to file a reply in support of its motion to dismiss.  (Doc. 15.)  The Court granted both motions.  (November 8, 2024 Order.)  McDonald Hopkins filed its reply on November 19, 2024.  (Doc. 16.)

## II.     STANDARD OF REVIEW

When addressing a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The sufficiency of the complaint is tested against the notice pleading requirement that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).

Rule 8(a)(2) requires a plaintiff to allege facts "providing not only fair notice of the nature of the claim, but also grounds on which the claim rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007) (internal quotations omitted).  "And the complaint's factual allegations, taken as true, 'must be enough to raise a right to relief above the speculative level.'  That means the complaint must allege facts supporting an inference that the defendant's liability is plausible, rather than just possible."  *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 87 F.4th 315, 320 (6th Cir. 2023) (quoting *Twombly*, 550 U.S at 555).  As such, the court will not permit

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 778 (citations omitted).

If a plaintiff pleads facts that reveal a flaw in the claim or substantiate a defense, she may plead herself out of federal court. In other words, "sometimes the allegations in the complaint affirmatively show that the claim is [deficient or disallowed as a matter of law]. When that is the case, as it is here, dismissing the claim under Rule 12(b)(6) is appropriate." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012); *see also Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010); *O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("A complainant can plead himself out of court by including factual allegations that establish that the plaintiff is not entitled to relief as a matter of law.").

When a court is presented with a Rule 12(b)(6) motion, it may only consider material related to the pleadings. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). Documents are considered related to the pleadings if they are attached to either the complaint or the defendant's motion to dismiss, referred to in the complaint, and central to the plaintiff's claims. *Id.* A court has complete discretion to determine "whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Barrett v. Harrington*, 130 F.3d 246, 253 (6th Cir. 1997) (citation omitted).

### III. ANALYSIS

#### A. Plaintiff's Obstruction of Justice Claim

In its motion to dismiss, McDonald Hopkins argues "[t]here is no private right or civil action for claims of 'obstruction of justice.'" (Doc. 10-1 at 516 (citing *Norris v. Eargle*, No. 1:14-cv-906, 2015 WL 5084779, at *9, 2015 U.S. Dist. LEXIS 113951 (N.D. Ohio Aug. 27, 2015)).) Obstruction of justice is not a private cause of action. *See Hamilton v. Reed*, 29 Fed.

App'x 202, 204 (6th Cir. 2002).  In her opposition, Plaintiff "acknowledges this point."  (Doc. 14-1 at 610.)  Accordingly, Alkuda's claim for obstruction of justice is not cognizable and is dismissed.  To the extent Alkuda argues this claim should be characterized as breach of fiduciary duty and fraud by McDonald Hopkins (*see id.*), her claims are discussed below with respect to the appropriate statutes of limitations.

**B.    Whether Plaintiff's Claims are Timely**

McDonald Hopkins argues "the statutes of limitation have long since run" on Plaintiff's claims.  (Doc. 10-1 at 517.)  Plaintiff "acknowledges that the filing of her complaint occurred eight days after the one-year deadline under Ohio Rev. Code. Ann. § 2305.19(A)" and asks the Court to equitably toll this period.  (Doc. 14-1 at 597–98.)  Otherwise, Alkuda argues the statute of limitations for breach of fiduciary duty, not legal malpractice, should apply to her claims.  (*Id.* at 599–600.)

**1.    Statute of Limitations**

For fraud, conversion, negligence, and breach of fiduciary duty, the statute of limitations is four years.  R.C. § 2305.09; R.C. § 5810.05(C); *see also White v. Barrington Golf Club*, No. 5:22-cv-130, 2023 WL 4133979, at *6, 2023 U.S. Dist. LEXIS 108348, at *13 (N.D. Ohio June 22, 2023) (discussing statute of limitations under Ohio law for breach of fiduciary duty, fraud, and conversion).  For breach of contract, the statute of limitations is six years.  R.C. § 2305.06.[4]

In Ohio, "the general rule [is] that 'a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed.'"  *Weidman v. Hildebrant*, — N.E.3d

---

[4] The Ohio Revised Code sets out different statutes of limitations for contracts in writing and those that are not.  *Compare* R.C. § 2305.06 (setting a six-year statute of limitations for written contracts) *with* R.C. § 2305.07 (setting a four-year statute of limitations for contracts not in writing).  The complaint implies the contracts at issue are the trust agreements.  (Doc. 1 at 21.)  Construing the allegations in the light most favorable to Plaintiff, the Court will apply the six-year statute of limitations for written contracts.

—, 2024 WL 3707590, at *3, (Ohio Aug. 8, 2024) (quoting *Norgard v. Brush Wellman, Inc.*, 766 N.E. 2d 977 (Ohio 2002)). For breach of fiduciary duty against a trustee, the statute of limitations starts at: (1) the removal, resignation, or death of the trustee; (2) the termination of the beneficiary's interest in the trust; (3) the termination of the trust; or (4) the time at which the beneficiary knew or should have known of the breach of trust. R.C. § 5810.05.

Taking Plaintiff's allegations as true, her claims are untimely. The statute of limitations for Plaintiff's fraud, negligence, conversion, and breach of contract claims began to run in 2016, when her father's estate was probated. The statute of limitations for her breach of fiduciary duty claims began to run at the latest when Alkuda knew or should have known of the breach of trust. In June 2016, Alkuda expected "to receive an estimated $4 million" from her father's estate. (Doc. 1 at 10.) She began requesting information from McDonald Hopkins as early as February 2016 and continuing into 2018. (Doc. 1-5 at 3–40; Doc. 1 at 12.) Plaintiff alleges McDonald Hopkins' responses were "an attempt to create confusion." (Doc. 1 at 12.) In April 2019, Alkuda filed suit against her mother and McDonald Hopkins for an accounting of her father's estate. (*Id.* at 7; *see also* Doc. 1-5.) Taken together, these allegations show Plaintiff knew or should have known of a breach of fiduciary duty by April 2019 at the latest.

In sum, Alkuda commenced this action over eight years after her claims for fraud, negligence, conversion, and breach of contract accrued, and over five years after the latest date her breach of fiduciary duty claim accrued. Therefore, Plaintiff's claims are barred by the applicable statutes of limitations.

    **2.**    **Savings Statute**

When a court "uses a state's Statute of Limitations, it also uses its procedural rules affecting that Statute of Limitations, including any savings statute." *Webster v. Spears*, 664 Fed.

App'x 535, 537 (6th Cir. 2016) (alterations and internal quotations omitted). Ohio's savings statute provides:

> In any action that is commenced or attempted to be commenced . . . if the plaintiff fails otherwise than upon the merits, the plaintiff . . . may commence a new action within one year after the date of . . . the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later.

R.C. § 2305.19(A). A savings statute is "remedial and is intended to provide a litigant with an adjudication on the merits." *Oko v. City of Cleveland*, No. 1:21-cv-2222, 2023 WL 4405270, at *9, 2023 U.S. Dist. LEXIS 117400, at *23 (N.D. Ohio July 7, 2023) (quoting *Wilson v. Durrani*, 173 N.E. 3d 448 (Ohio 2020)). As such, Section 2305.19(A) "neither operates as a statute of limitations nor operates to toll the statute of limitations but rather provides a plaintiff with a limited period of time in which to refile a dismissed claim by commencing a new action that would otherwise be barred by the statute of limitations." *Id.*

In Ohio, a "voluntary dismissal, pursuant to Civ.R. 41(A)(1), constitutes a failure otherwise than upon the merits within the meaning of the savings statute." *Windsor House, Inc. v. Ohio Dept. of Job & Fam. Servs.*, 2010-Ohio-257, 2010 WL 323269, at *4, 2010 Ohio App. LEXIS 214, at *11 (Ohio App. Jan. 28, 2010). There is no dispute that Alkuda failed otherwise than upon the merits in the Cuyahoga County Probate Court when she filed a voluntary dismissal of her claims against McDonald Hopkins on June 20, 2023. (*See* Doc. 1-20 (Judgment Entry).)

Therefore, under Ohio's savings statute, Plaintiff could refile her case within one year of the voluntary dismissal of her probate court case. Plaintiff missed this deadline by eight days. (*See* Doc. 14-1 at 597 ("Plaintiff acknowledges that the filing of her complaint occurred eight days after the one-year deadline under Ohio Rev. Code Ann. § 2305.19(A) and sincerely regrets this delay.").) Plaintiff filed this action outside the limited period set by Ohio's savings statute.

3. **Equitable Tolling**

Despite Plaintiff's concession that she missed the deadline to refile her case, she argues "[c]ourts have consistently found that [medical emergencies] justify tolling where a plaintiff's caregiving responsibilities prevent timely filing." (*Id.* at 598.) Plaintiff's son was hospitalized several times in May and June 2024. (*Id.*) Plaintiff argues her duties as his caregiver constitute "extraordinary circumstances" that justify tolling the statute of limitations. (*Id.*)

The doctrine of equitable tolling "allows courts to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000)). Federal courts rely on this doctrine sparingly. *Id.*; *see also McCualsky v. Appalachian Behav. Healthcare*, 100 N.E.3d 1049, 1055 (Ohio Ct. App. 2017) (In Ohio "equitable tolling is to be applied sparingly and only in exceptional circumstances."). The moving party "carries the burden of establishing her entitlement to equitable tolling." *Jackson v. U.S.*, 751 U.S. 712, 718–19 (6th Cir. 2014).

Generally, Courts permit equitable tolling when "parties [] were prevented from complying with statutory deadlines through no fault or lack of diligence on their own." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1012 (6th Cir. 2024) (citing *Strother v. Columbus*, 200 N.E.3d 1265, 1275 (Ohio Ct. App. 2022)). A party must show she was "intentionally misled or tricked into missing the filing deadline." *Id.* (citing *Roach v. Vapor Station Columbus Inc.*, 2022-Ohio-2106, 2022 WL 2211529, at *2 (Ohio Ct. App. June 21, 2022)). In the Sixth Circuit, "[i]llness—mental or physical—tolls a statute of limitations only if it actually prevents the sufferer from pursuing his legal rights during the limitations period." *Price v. Lewis*, 119 Fed. App'x 725, 726

(6th Cir. 2005). Alkuda has not asserted that she was intentionally misled or tricked into missing the filing deadline. Likewise, Alkuda has not asserted any illness, medical issue, or physical limitation prevented her from complying with either the statutes of limitations applicable to her claims or Ohio's recognized savings statute. To give Alkuda the relief she seeks by asserting equitable tolling, the Court must find something prevented her from timely compliance. No such information has been put forward. Thus, Alkuda has not demonstrated extraordinary circumstances warranting application of the equitable tolling doctrine.[5]

## IV. CONCLUSION

For the reasons above, Defendant's motion to dismiss (Doc. 10) is GRANTED, and this case is DISMISSED with prejudice.

**IT IS SO ORDERED.**

Date: March 18, 2025

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

---

[5] McDonald Hopkins asserts that Alkuda's opposition brief contained fictitious, AI-generated legal citations. (Doc. 16 at 618–20.) As other courts have noted, "it is possible that Plaintiff is not aware of the risk that ChatGPT and similar AI programs are capable of generating fake case citations and other misstatements of law." *Dukuray v. Experian Info. Sols.*, No. 23-cv-9043, 2024 WL 3812259, at *11, 2024 U.S. Dist. LEXIS 132667, at *29 (S.D.N.Y. July 26, 2024), *report and recommendation adopted*, 2024 WL 3936347. Submitting fictitious legal citations is not permitted, whether submitted by a *pro se* litigant or a licensed attorney. Alkuda is now on notice that any further submissions of fictitious legal citations to a court may result in dismissal or other sanctions, including monetary penalties, as deemed appropriate by the Court.